IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBERLY G. WEDDELL,

                        Plaintiff,                 Case No. 3:07 CV 6

        -vs-

                                              <u>MEMORANDUM   OPINION</u>

RETIREMENT COMMITTEE OF THE
WHIRLPOOL PRODUCTION EMPLOYEES
RETIREMENT PLAN, et al.,

                        Defendant.

KATZ, J.

**I. Introduction**

        This matter is before the Court on cross-motions for summary judgement regarding a

dispute over a claim for disability retirement filed by Plaintiff Kimberly G. Weddell from

Defendants Whirlpool Production Employees Retirement Plan and the Plan's Retirement

Committee ("Committee"), under an ERISA Plan administered, at least in part, under contract by

UniCare.  UniCare denied Plaintiff's petition for disability retirement, and Plaintiff's appeal was

also denied.  Both Plaintiff and Defendants seek judgment from this Court in the form of summary

judgment on the administrative record ("Record"), pursuant to *Wilkins v. Baptist Healthcare Sys.,*

*Inc.*, 150 F.3d 609 (6th Cir. 1998).  The motions before this Court are Defendant's motion for

summary judgment on the administrative record (Doc. 14), Plaintiff's amended motion for

judgment as a matter of law (Doc. 19), Plaintiff's amended motion for statutory penalties (Doc.

20), and Plaintiff's motion to restore certain documents to the administrative record (Doc. 21).

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Background

### A. The Plan

Plaintiff was an employee of Whirlpool and a participant in the Plan, which provides for various benefits, including disability benefits.  The Plan defines "Disability" as "totally and permanently disabled, which is the condition of a Participant determined on the basis of medical evidence satisfactory to the Committee, whereby such person is found to be wholly and permanently prevented from engaging in any regular occupation or employment for wage or profit . . . ."  (R. at 15.)  The Plan is administered by the Committee, which, pursuant to Section 8.3 of the Plan, has the right to delegate all of its discretion, rights, powers, limitations, and duties with respect to administration of the Plan. (R. at 52.)  In this case, the Committee delegated its powers and discretion to review disability claims to UniCare, a third-party administrator, by contract dated March 1, 1995 and effective during all times relevant to this matter.

Defendant argues that the Plan provides a specific claims procedure for disability claims.  Pursuant to Section 8.7(b), there are two levels of review.  First, a claimant must submit a claim for disability benefits.  If the claim is denied, the claimant may appeal the denial of that claim to the Committee or the Committee's designated administrator.  (R. at 54.)  If, upon review of the appeal of the denial, the original denial is upheld, the claimant has exhausted the Plan's administrative remedies.  (R. at 55-56.)  Plaintiff argues that the Plan Summary provides for a level of appeal to both the Committee's designated administrator *and* to the Committee itself.  The Plan provides that administrative appeals are to be reviewed by the Administrator, which the Summary identifies as the Committee.  The resolution of these two divergent interpretations of the

2

contractual relationship between Defendants and UniCare is a question of law, discussed and decided herein at section IV(A)(2).

### B. Plaintiff's Medical History

Weddell's disability began with an injury to her shoulder in December, 2002.  (R. at 281-82.)  After a period of therapy did not resolve her pain (R. at 283, 281-82), Dr. Antonio Rosario performed arthroscopic surgery on her left shoulder and rotator cuff.  (R. at 382-83.)  Weddell began rehabilitation after surgery (R. at 286-87), but by August 2003 her physician, Marc Comianos, M.D., stopped her physical therapy after being advised by the therapist that "[patient] has unusual low endurance and loss of strength through her body."  (R. at 391.)  Dr. Comianos noted that Weddell "complains of generalized weakness" and that she "may have some type of process going on which is generalized. . . ."  (R. at 442.)  In mid-September, 2003 Weddell was evaluated by Praveen Giri, M.D., a neurologist.  (R. at  439-40.)  Following her examination, Dr. Giri diagnosed Weddell as suffering from peripheral neuropathy and recommended further tests to rule out neuromuscular disease.  (R. at 439.)  Weddell consulted in late 2003 and early 2004 with William Springer, D.P.M. (R. at 434); Dr. Madhu Mehta, a rheumatologist (R. at 254-55, 262-63); Dr. Clairmont at the Ohio State University (R. at 249); and Dr. Miriam Freimer at Ohio State, (R. at 249-250).  Dr. Mehta diagnosed Weddell in October 2003 as suffering widespread osteoarthritis, possible fibromyalgia and weakness in the lower extremities.  Dr. Mehta noted that an EMG performed by Dr. Clairmont suggested polyneuropathy.  Dr. Freimer performed a neurological and mental status examination and opined that Weddell may be suffering from "a myopathic process" and ordered additional tests.  (R. at 250.)

On August 2, 2004, Weddell was evaluated by Bipin DeSai, M.D., a psychiatrist. Dr. DeSai recorded that since her shoulder surgery, Weddell had "been experiencing generalized weakness, especially worse in her legs, severe fatigue and a poor attention span." He noted that she had seen several specialists "and nobody can find out what is wrong with her." Dr. DeSai's diagnosis was:

| Axis I: | A. Major Depressive Disorder, moderate, recurrent |
| | B. Panic Disorder without agoraphobia |
| | C. Somatoform disorder, NOS |
| Axis II: | Cluster C personality traits |
| Axis III: | A. Arthritis |
| | B. Generalized weakness for further evaluation |
| | C. Status post fx of left wrist and surgery to left shoulder |
| Axis IV: | Psychosocial stressors, financial difficulties and multiple health problems |
| Axis V: | GAF Current – 55, Highest Prior Year – 65 |

(R. at 230.)  The record reflects that Dr. DeSai continued to treat Weddell throughout the time period relevant to this case.  (*See, e.g.*, R. at 213, 221, 223-28.)

In December, 2004, Weddell consulted Thomas E. Gretter, M.D. at the Cleveland Clinic. (R. at 197-98.)  In his examination, Dr. Gretter observed that Weddell "does appear to have adventitious movement, almost athetoid, of her main trunk. She tends to dip her head slightly, but her movements are normal."  (R. at 198.)  His impression was "[m]uscle weakness and myalgia, etiology and type undetermined." *Id.*  Dr. Gretter also expressed "concern over central nervous system etiology" and questioned whether Weddell was suffering from a demyelinating disease. *Id.*  As of the time the administrative record in this case closed, no physician had discovered the precise cause of Weddell's physical problems.

### C. Plaintiff's Claims for Disability Benefits

4

Beginning in March, 2003, Weddell received short-term disability benefits from Whirlpool.  (R. at 494, 503.)  On February 1, 2004, Weddell submitted an application for disability retirement.  (R. at 184.)  Plaintiff submitted her first claim for benefits on or about February 1, 2004, and UniCare acknowledged receipt of that claim in a letter dated February 23, 2004.  (R. at 184-85.)  Plaintiff claimed that she was disabled as a result of generalized weakness and pain in her legs.  (R. at 163, 184.)  After review of the medical records provided in support of Plaintiff's claim for disability benefits, the claim was denied on March 12, 2004, when Carol Barrentine of UniCare wrote to Weddell, as follows, to tell her that her application had been denied:

> We have reviewed your application for Whirlpool Disability Retirement Plan Benefits. It appears your disability does not meet the criteria for total and permanent disability as required under your retirement Plan.
>
> If you wish to appeal this decision you may appeal this denial of benefits to the Retirement Committee within 180 days from the receipt of this notice. You must submit to our office all documents or records in support of your claim that may substantiate total and permanent disability (this means additional information and not a re-submission of previously supplied medical records).
>
> Any additional information you submit must be sent to the address indicated in the letterhead and the envelope should be clearly marked "Personal & Confidential" and indicate Attention: Disability Retirement Review.

(R. at 186.)  On March 25, Barrentine wrote again.  That letter included the same language of the March 12 letter, and included an additional paragraph:

> On March 22, 2004 we received medical documentation that appears to be a duplicate of past submitted information. If you wish to appeal the denial of your Disability Retirement benefits we must have this request in writing as instructed above.

(R. at 310.)  Plaintiff did not appeal this denial.

5

Over the next several months, Plaintiff was on medical leave which expired on February 12, 2005. (R. at 187.)  On February 9, 2005, Plaintiff submitted a second claim for disability benefits, again claiming that she was disabled due to generalized weakness and pain.  (R. at 188.)  Dr. Comianos submitted a "Functional Capacity Estimate" (R. at 364-66), in which he reported that Weddell could not lift, carry, push, or pull any weight; that she could not stoop bend, kneel, or crawl; that she had difficult with eye-limb coordination; that she could not work outside, at heights, or around moving machinery or vibration; and that she could not drive. He noted that Weddell had "difficulty with lower limb coordination, gait abnormal, cannot walk well."

Defendants acknowledged receipt of Plaintiff's claim in a letter dated February 11, 2005. (R. at 189.)  After review of her claim and the medical records provided by Plaintiff, Plaintiff's claim for disability benefits was denied.  (R. at 190.)  In a letter dated March 4, 2005, Barrentine wrote again to Weddell to advise her that her application was denied. That letter was essentially the same as the previous letter of March 12, 2004.  (R. at 190.)  Weddell appealed the decision to UniCare.  (R. at 191.)  She included with her appeal a March 23, 2005 statement from Dr. DeSai that Weddell was "permanently and totally disabled."  *Id*.  In his notes on that same day, Dr. DeSai recorded:

> Patient depressed, anxious, somatically preoccupied. Still awaiting her social security hearing. Stated UniCare turned down her disability.  She stated, "Dr. Comianos gave me a note to return back to work, the shop doctor will not allow me to return to work, he stated I'm not strong enough to be working in a factory". Patient's attention span poor. She is overwhelmed, having difficulties with her short-term memory, experiencing recurrent panic attacks, feeling hopeless, however, denies any suicidal or homicidal thoughts. … Her insight is limited. … In my opinion at this time she is totally disabled. Advised her to have UniCare, her disability company contact me.…

(R. at 225.)

6

On August 19, 2005, UniCare contacted Plaintiff by telephone and advised her that additional information had been requested from her treating physicians on August 2, 2005, but that no response had been provided.  On August 22, 2005, UniCare notified Plaintiff that it was extending the time to review Plaintiff's appeal so that it could obtain and review additional documentation it had requested regarding Plaintiff's claims.  (R. at 192.)  Thereafter, Plaintiff contacted UniCare and sought a voluntary extension of time for UniCare to review her appeal. Accordingly, on September 27, 2005, at Plaintiff's request, UniCare again extended the review of Plaintiff's appeal so that Plaintiff could provide UniCare with additional information from Plaintiff's physicians regarding her conditions.  (R. at 194-95.)

On August 22, 2005, UniCare wrote to Dr. Comianos and asked him to discuss Weddell's impairments and the extent to which they rendered Weddell disabled.   (R. at 319.)  Dr. Comianos returned UniCare's form, opining that Weddell was totally and permanently disabled due to "arthritis and weakness in her arms, legs.  Patient fatigues quickly with little exertion…. Patient has unusually low endurance, loss of strength, peripheral neuropathy."  Doc. 21 at 10, Ex. 1 at 260.  At UniCare's request, Dr. DeSai also submitted a report supporting Weddell's disability claim.  (R. at 214-17.)  In that report, Dr. DeSai recorded his diagnosis as "major depressive disorder, panic disorder, somatoform disorder NOS."  (R. at 214.)  He reported that she did not perform well on psychological testing, that she was compliant with her medications, and that her prognosis was "guarded."  (R. at 214-15.)  Dr. DeSai described Weddell's functional limitations as including poor attention span, memory difficulties, "overwhelmed," and somatically pre-occupied. (R. at 215.)  He described Weddell's prognosis for returning to work as "poor" and said that he "never" expected Weddell to return to work.  (R. at 216.)

7

In a twenty-two page letter dated April 4, 2006, UniCare explained the bases for the denial of Plaintiff's appeal.  (R. at 162-183.)  Specifically, after providing a detailed summary of all the medical records provided in support of Plaintiff's claim, UniCare concluded that the medical evidence did not support Plaintiff's claim of total and permanent disability that precluded her from performing the duties of any job.  (R. at 179-182.)  First, the letter explained that a number of Plaintiff's claims of weakness and pain were determined to have been subjective because UniCare did not consider them to be supported by objective medical evidence.  For example, the denial explained that although one of her treating physicians assessed Plaintiff with symptoms of peripheral neuropathy, polyneuropathy, generalized weakness, osteoarthritis and fibromyalgia, the diagnostic testing performed on Plaintiff was normal and did not support a finding of total and permanent disability.  (R. at 179-80.)  As another example, a July 8, 2003 MRI of Plaintiff's spine revealed only minor anterior disc bulging and no stenosis or herniation.  (R. at 179; *see also* R. at 464.)  A December 18, 2003 MRI revealed no abnormalities involving Plaintiff's brain.  (R. at 179; *see also* R. at 279.)  A January 8, 2004 EMG returned only normal results.  (R. at 178, 431-33.)  A February 3, 2004 physical therapy assessment indicated that Plaintiff had the capacity for sedentary work.  (R. at 178, 277-78.)

The letter went on to explain UniCare's assessment that although Dr. Giri, a neurologist at the Smith Clinic in Marion, Ohio, questioned if Plaintiff had neuromuscular disease, the results of the laboratory and clinical studies performed on Plaintiff were normal. (R. at 179; *see also* R. at 465-88.)  Although Plaintiff complained about pain and weakness in her legs, some of her physicians indicated that her gait and movements were normal. (R. at 179-80; *see also* R. at 198, 202, 250.)  Dr. Freimer reported in February 2004 that Plaintiff was able to return to work.  (R. at

8

268.)  Dr. Gretter diagnosed Plaintiff with only "other malaise and fatigue" on March 2, 2005, and ordered an EMG on Plaintiff's left arm and leg, which revealed no evidence of myopathy or peripheral polyneouropathy.  (R. at 197-203.)  Dr. Gretter also noted that Plaintiff's labs were normal, that she had full range of motion of all joints, that x-rays of Plaintiff's left and right hands, wrists, cervical spine, and left shoulder were "unremarkable." (R. at 198.)  Dr. Gretter's records also indicated that individual testing of Plaintiff's muscles distally did not demonstrate weakness. (R. at 198.)  In addition, the results of other studies and laboratory work performed on plaintiff revealed no significant findings and did not provide a explanation for Plaintiff's complaints.  (R. at 197-203; 347-53; 404-23; 467-88.)  The letter concluded that it was UniCare's determination that, although some of the physicians who examined Plaintiff concluded that she had symptoms of generalized weakness, osteoarthritis, and fibromyalgia, the testing performed was essentially normal and did not support that the referenced physical conditions and symptoms would have rendered Plaintiff totally and permanently disabled.  (R. at 181-82.)  As such, the objective findings submitted did not support one of Plaintiff's treating physician's conclusion that she was totally and permanently disabled and unable to perform the duties of any job.

UniCare also found that a number of Plaintiff's claims and the claims of Plaintiff's treating physicians were not reflected in the medical records submitted in support of Plaintiff's claim of permanent and total disability, and did not support Plaintiff's claim that she was unable to perform the duties of any occupation due to her mental and nervous conditions.  For example, although one of Plaintiff's treating physicians, Dr. Comianos, an osteopathic physician at the Smith Clinic in Marion, Ohio, indicated in a September 27, 2005, letter that for over two years Plaintiff had been treated for depression/anxiety disorder, bipolar disorder, and attention deficit disorder without

9

improvement, UniCare did not find support for that statement in Dr. Comianos' medical records. (R. at 182; *see also* R. at 318, 330-46.)  In fact, although Dr. Comianos indicated that Plaintiff complained of psychiatric and mental/nervous symptoms since August 2003, there was no documentation in any of his records between August 2003 and February 2005 that Plaintiff reported any mental or nervous symptoms.  Moreover, UniCare took Dr. Comianos' statements to conflict with Dr. Desai's records which indicate that Plaintiff's mood and affect had improved and her panic attacks had resolved.  (R. at 180-81, 227-30.)  In addition, UniCare found that, although Dr. Desai eventually opined that Plaintiff was disabled due to her mental and nervous conditions as of August, 2003, Dr. Desai did not treat Plaintiff between August, 2003 and August, 2004.  Accordingly, UniCare upheld the denial of Plaintiff's claim for disability benefits, concluding that the medical evidence failed to support the conclusion that Plaintiff was unable to perform the duties of any job.

The letter further advised Plaintiff that she had a right to appeal and directed her to submit her appeal to the Committee at an address in Benton Harbor, Michigan.  (R. at 182.)  The letter also stated that Weddell was "entitled to receive, upon request and free of charge, reasonable access to, and copies of all documents, records, and other information relevant to [her] claim for benefits."  *Id.*  On June 29, 2006, through counsel, Plaintiff wrote to the Committee at the Benton Harbor address, indicating Plaintiff's desire to pursue an appeal to the Committee as directed by UniCare, and requesting a copy of the Plan and the Record.  The Committee did not respond.  On July 26, 2006, Plaintiff, through counsel, again wrote to the Committee, requesting those documents.  Plaintiff also sought the documents from UniCare.  On  August 14, 2006, Whirlpool responded with a copy of the SPD, but refused to furnish other documents without a charge of

10

twenty-five cents per page. On September 29, 2006, Plaintiff Weddell's counsel reiterated his request for free documents pursuant to ERISA. There was no response until after Plaintiff filed this suit before this Court on January 3, 2007. On March 23, 2007, counsel for the Committee produced to Plaintiff a copy of the Plan and Record.

## III. Standard of Review

### A. Determination of Standard of Review

This matter is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). As a general principle of ERISA law, federal courts review a plan administrator's denial of benefits de novo, "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist Healthcare Sys., Inc*., 150 F.3d 609, 613 (6th Cir. 1998)(citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When a plan administrator has discretionary authority to determine benefits, the Court will review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996), *Sanford v. Harvard Indus., Inc*., 262 F.3d 590, 595 (6th Cir. 2001). In other words, if the Plan gives the administrator *Bruch* discretion, the "arbitrary and capricious" standard applies. If the Plan does not give the administrator *Bruch* discretion, the Court will review the administrator's denial of benefits de novo. *Bruch*, 489 U.S. at 115.

The Sixth Circuit "has read *Firestone v. Bruch* to hold that discretion is the exception, not the rule and that the arbitrary and capricious standard does not apply unless there is a *clear* grant of discretion to determine benefits or interpret the plan." *Crider v. Highland Life Ins. Co.*, 458 F.Supp.2d 487, 501 (W.D. Mich. 2006), citing *Wulf v. Quantum Chem. Corp*., 26 F.3d 1368, 1373

11

(6th Cir.1994) (emphasis in original); *see also Anderson v. Great West Life Assur. Co.*, 942 F.2d 392, 395 (6th Cir.1991).  The party claiming entitlement to review under an arbitrary and capricious standard has the burden of proving that the standard applies. *See, e.g.,  Brooking v. Hartford Life & Acc. Ins. Co.*, 167 Fed.Appx. 544, 547, 2006 WL 357881 (6th Cir. 2006); *Banner v. Trustmark Ins. Co.*, No. C2-04-1099, 2006 WL 745187, at *7 (S.D. Ohio 2006).  "While no particular language is necessary to vest the plan administrator with discretion to interpret the plan or make benefit determinations, the Sixth Circuit 'has consistently required that a plan contain "a clear grant of discretion [to the administrator] to determine benefits or interpret the plan."'" *Crider*, 458 F.Supp.2d at 501 (citing *Perez*, 150 F.3d at 555 (quoting *Wulf*, 26 F.3d at 1373) (italics and alteration in original), and *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002)).

Additionally, "[i]t is well established that an ERISA fiduciary may delegate its fiduciary responsibilities to either another named fiduciary or a third party if the plan establishes procedures for such delegation." *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 Fed.Appx. 734, 742 (6th Cir. 2005).  Where a named fiduciary with discretionary authority designates another fiduciary, "then discretionary review 'applies to the designated ERISA fiduciary as well as to the named fiduciary.'" *Id.* (*citing* 29 U.S.C. § 1105(c)(1)); *see also Bayer v. Holcroft/Loftus, Inc.*, 769 F.Supp. 225, 229 (E.D. Mich.1991) ("The same arbitrary and capricious standard applies even though [the original administrator] delegated to [the designee] its duty of interpreting the Plan as to benefits.").

The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action."  When applying the arbitrary and capricious standard, "the Court must

12

decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)(internal citations and quotations omitted).  Consequently, a decision will be upheld "'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Id.* (quoting *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).  "The ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys., Inc*., 313 F.3d 356, 362 (6th Cir. 2002).

The arbitrary and capricious standard of review "is not, however, without some teeth." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (quoting *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107-08 (7th Cir. 1998)). "Merely because our review must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Moon v. Unum Provident Corp*., 405 F.3d 373, 379 (6th Cir. 2005). The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald*, 347 F.3d at 172.

13

In reviewing the administrative record in an ERISA denial of benefits case under the arbitrary and capricious standard, the Sixth Circuit has established certain other rules that guide this Court's interpretation of the record.

> Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

347 F.3d at 169.  In ERISA cases, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). However, the Supreme Court has also noted that "plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.  See Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006).

Additionally, although the Sixth Circuit has found "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination," *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005), it is a factor to be considered in reviewing the propriety of an administrator's decision regarding benefits.

> We regard [the plan administrator's] decision to conduct a file review rather than a physical exam as just one more factor to consider in our overall assessment of whether Liberty acted in an arbitrary and capricious fashion. Thus, while we find that [the administrator's] reliance on a file review does not, standing alone, require the conclusion that [the administrator] acted improperly, we find that the failure to conduct a physical examination - especially where the right to do so is specifically reserved in the plan - may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.

14

*Id.* at 295; *Evans*, 434 F.3d at 877.  Additionally, "a plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician."  *Id.*  "[A]n independent medical examination under particular circumstances [also constitutes an] element in the equation of the reasonableness of an administrator's benefits determination."  *Id.*; *see generally*, *Mikolajczyk v. Broadspire Services, Inc*., 2006 WL 2583391 (N.D. Ohio 2006).

**IV. Discussion**

Plaintiff argues that UniCare's review suffered from numerous procedural defects, as well as that UniCare's denial was substantively wrong based on the Record.  The Court notes the disagreement on the merits of Plaintiff's substantive claim, but does not reach that issue in this opinion.  The Court's decision rests on the procedural deficiencies of Defendants' and UniCare's claims review.

**A. Procedural Defects**

Plaintiff argues that the matter should either be resolved in favor of Plaintiff or remanded for further review by the administrator because numerous procedural defects existed in the claims review and appeals process.

"Generally, an administrator's failure to comply with ERISA procedural requirements can result in a remand by the reviewing court to the administrator."  *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006), citing *VanderKlok v. Provident Life and Acc. Ins. Co.*, 956 F.2d 610, 619 (6th Cir. 1992).  The Sixth Circuit has also held that administrators need only "substantially comply" with ERISA's procedural notice requirements in order to avoid remand.  *Moore*, 458 F.3d at 436, citing *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir.

15

1996).  In determining whether there is substantial compliance, the Circuit requires consideration of "all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances."  *Moore*, 458 F.3d at 436; *see also Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 461 (6th Cir. 2003); *White v. Aetna Life Ins. Co.*, 210 F.3d 412, 414 (D.C. Cir. 2000); *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 662 (7th Cir.1997) ("The question is whether [the plaintiff] was supplied with a statement of reasons that under the circumstances of the case permitted a sufficiently clear understanding of the administrator's decision to permit effective review.").  "When claim communications as a whole are sufficient to fulfill the purposes of Section 1133 the claim decision will be upheld even if a particular communication does not meet those requirements." *Kent*, 96 F.3d at 807; *see Moore*, 458 F.3d at 436.  "In this analysis, this Court asks whether the plan administrators fulfilled the essential purpose of § 503-notifying Plaintiff of their reasons for denying his claims and affording him a fair opportunity for review." *Id.*

Plaintiff argues that the following procedural defects existed in the review process: UniCare's initial denials did not provide Plaintiff with detailed reasons for the denial;  UniCare's decision was not timely; Plaintiff was denied the opportunity to appeal her denial to the Committee; UniCare charged Plaintiff a fee for copies of Plan documents; UniCare failed to provide the administrative record to Plaintiff upon request; UniCare relied on an unidentified health care professional; and the Record before this Court is inadequate.

### 1. Reasons for Decision in Denial Letters and Timeliness

ERISA provides the following:

In accordance with regulations of the Secretary, every employee benefit plan shall-

16

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. ERISA requires that claimants be advised of the "specific reason or reasons for the adverse determination [with r]eference to the specific plan provisions on which it was based" and what additional information is necessary for the claimant to perfect her claim. 29 C.F.R. §§2560.503-1(g)(1)(I)-(ii). In determining whether there is substantial compliance with procedural requirements such as notice, the Court requires consideration of "all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Moore*, 458 F.3d at 436.

In this case, the denial letters of March, 2004 were basic at best. The effect of those letters, however, is offset compared to the entire context of the Record. The initial denial letter in response to the 2005 claim, like the March, 2004 letters, stated with somewhat questionable clarity the reason for denial: the administrator decided that the medical information submitted to it did not support a conclusion that Plaintiff was totally disabled from performing all jobs. When Plaintiff received the March, 2005 letter, Plaintiff took the appropriate steps to appeal the decision as prescribed in the SPD, the Plan, and the denial letter: she appealed first to UniCare, and then sought appellate review by the Committee.

Over the next several months, the process was extended on numerous occasions. Such extensions, however, appear from the Record to have been necessary in order to receive information from treating physicians, consented to by both parties, and even, in at least one

17

instance, requested by Plaintiff.  Plaintiff advances no significant consequences alleged to have

resulted from the extensions.  The extensions cannot be said to have prejudiced Plaintiff or the

appeals process.  There were also numerous phone conversations between the parties regarding

claims procedures and information entering the Record.  Finally, when UniCare denied Plaintiff's

appeal, it did so in a detailed 22-page letter that explained much of the evidence before the

administrator and the reasons the administrator considered that evidence to fall short of supporting

Plaintiff's claim.[1]  Considering all these communications between Plaintiff and UniCare, it is clear

that the information was sufficient to allow Plaintiff ample opportunity to perfect her claim and to

complete the Record, at least at the level of UniCare's initial and appellate review of Plaintiff's

claim.  With regard to her appeal to the Committee, as discussed below, the communications were

not nearly adequate.

### 2. Appeal to the Committee, Production of Plan Documents and Record

In UniCare's letters of March, 2004 and 2005, UniCare indicated that Plaintiff could

appeal to the Committee.  Plaintiff alleges that she had such a right and it was denied by

Defendants.  The Plan provides that the Committee has the authority to delegate all of its

discretion, rights, powers, limitations, and duties with respect to the administration of the Plan.

(R. at 52.)  Defendants contracted with UniCare to administer the Plan for claims to be filed and

processed directly by UniCare.  (Contract Between Whirlpool Corporation and UniCare, Doc. 24-

---

[1]

 While the 22-page letter appears at first glance to have been too little too late, when viewed in
conjunction with this Court's holding that the appeals process was not exhausted at that point in
the review process, the 22-page explanatory letter constitutes adequate notice to Plaintiff about
the reasons for UniCare's denial of benefits, which will be relevant upon this Court's remand to the
administrator and in subsequent reviews and appeals, both administrative and judicial.

18

2, Ex. 1.)  The Committee claims that UniCare was mistaken in its belief that an additional appeal

was available beyond the appeal of the initial decision by UniCare.  In fact, the Committee puts

much of the onus for the apparent procedural defects on this "mistaken belief" by UniCare, which

was communicated to Plaintiff on at least three occasions (in the March, 2004 and 2005 letters).

Def.'s Br., Doc. 24 at 18 ("Similar to Plaintiff's claim that she was not provided a copy of the Plan

and the administrative record of her claim and appeal, [Plaintiff's claim that she was entitled to an

appeal to the Committee] is based on UniCare's mistaken belief that Plaintiff was entitled to a

second appeal under the terms of the Plan."[2]).

The contract between Whirlpool and UniCare, in Appendix B, provides the following:

I. CLAIM PROCESSING AND PAYMENT
UNICARE shall thoroughly review each claim and each recurring benefit payment
and shall compute the benefits payable, if any, on each such claim in accordance
with the information on benefits furnished to UNICARE by Whirlpool Corporation
as set forth in Appendix A and any other applicable written instruments from
Whirlpool Corporation, subject to the provisions and conditions set forth below,
***
c) Initial processing of claims will include informing the claimant and/or provider,
through the use of standard explanation of benefits and non-covered codes, of
action taken according to Whirlpool Corporation's Instructions and Plan.
d) Where a claimant advises the UNICARE Claim Office in writing of a
disagreement with the action taken on a claim, UNICARE shall:

> (I) review the claim in accordance with the information on benefits
> furnished to UNICARE by Whirlpool Corporation as described
> above to determine if there is additional information which should
> be taken into account in processing the claim or if an error has been
> made in the initial processing, and

---

[2]

In response to Plaintiff's claims that she was denied copies of the Record and charged fees for
Plan documents, Defendants argue basically that Plaintiff was not entitled to such requests
because, UniCare having denied Plaintiff's appeal, the administrative appeals process was over.
By virtue of the Court's finding that the Plan provides for an appeal to the Committee, many of
Plaintiff's requests were made during a period of time that should have been an appeal period.

19

> (ii) inform the claimant and/or provider by letter of the results of such review providing the claimant specific information regarding Whirlpool Corporation's claim appeal procedure.
> e) If a claimant, after requesting the review of a claim as described above, contests the result of such review and requests that the claim be submitted to Whirlpool Corporation's claim appeal procedure, the UNICARE Claim Office shall make available to Whirlpool Corporation a copy of all correspondence relating to such claim and the entire claim file so that the claim can be submitted to Whirlpool Corporation's claim appeal procedure for an ultimate determination. Whirlpool shall advise UNICARE in writing of the ultimate determination in order that UNICARE may close the claim file.
> f) All doubtful claims or benefit amounts, after thorough review, shall be referred to Whirlpool Corporation for its determination of liability. "Doubtful" claims shall mean all claims where the requirements are unclear either as to intent or specifics with respect to determination or instruction to UNICARE.

Contract at 13, Doc. 24-2 at 18.

The clear reading of this text demonstrates that there is a level of appeal beyond the decisions of UniCare, and that appeal shall be to the Committee. That appeal option was referenced on numerous occasions by the administrator UniCare. When Plaintiff sought such appeal, the Committee denied it, and before this Court, the Committee denies the existence of such an avenue for appeal. Defendants' argument has no support in the contract. Defendants argue that the Committee's authority as administrator was entirely delegated to UniCare by operation of this contract. A reading of the language above, however, reveals that only some of the authority and duties of a plan administrator were delegated to UniCare. The authority and duty to consider an appeal from UniCare's final decision was reserved by the Committee. By creating, dangling, and then denying an administrative appeal to Plaintiff, Defendants failed to even substantially comply with ERISA's requirement that they provide an opportunity for full and fair review.[3] The

_____

[3] For that matter, depending on the relationship between the Plan, the employer, and the
                                                                    (continued...)

20

Committee's communications were incorrect, confusing, and inadequate to meet its duty under ERISA. Due to these procedural defects, the "denial of benefits must be reversed and this case must be remanded for a full and fair review of plaintiff's claim." *VanderKlok*, 956 F.2d at 616-17.

### 3. Restoring Documents to the Record

Plaintiff moves the Court to restore certain documents to the administrative record (Doc. 21), arguing that they were part of the Record as originally provided by Defendants on March 23, 2007, but were excluded in the Record filed before this Court by Defendants on October 5, 2007 (Doc. 14, Ex. 1-22). Defendants argue that the Court is limited to the evidence that was before the administrator, and the letters were not before the administrator at the time UniCare decided Plaintiff's claim.

The documents at issue are the following: an April 4, 2006 memorandum from Vikki Harvey at UniCare to the Committee; the June 29, 2006 letter from Weddell's counsel to the Committee; the July 26, 2006 letters from Weddell's counsel to the Committee and to UniCare; the August 14, 2006 letter from Whirlpool to Weddell's counsel; the September 29, 2006 letter from Weddell's counsel to the Committee; an internal e-mail message dated August 7, 2006, regarding Weddell's request for an appeal; and the medical statements by Dr. Comianos sought by UniCare. These documents were not part of the Record as it stood before UniCare upon its review of Plaintiff's claim. However, they were before the Committee upon its denial of Plaintiff's

---

[3](...continued)

Committee, the language of this contract (giving the Committee discretion over decisions made by the administrator) may also raise a question of whether *Bruch* discretion has been granted to the administrator. At the least, this prospect may raise a question of conflict of interest; at the most, it could lead to a de novo review of Whirlpool's determination. The Court need not rule on this issue at this juncture, as remand is the appropriate remedy at this point.

request for appeal to the Committee.  The Committee is an administrator of the ERISA Plan at

issue here, according to the terms of the Plan.  UniCare is also an administrator, by way of

delegation of *some* of the administrative authority, as described above.  Defendants originally

included the documents in the Record produced to Plaintiff.  The information contained in those

documents informed, and indeed served as part of the basis for, the Committee's denial of

Plaintiff's opportunity for appeal.  Those exhibits, therefore, are subject to consideration by this

Court and shall be restored as part of the Record in this case.[4]

### 4. Statutory Penalties

Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4), provides in pertinent part that "[t]he

administrator shall, upon written request of any participant or beneficiary, furnish a copy of the

latest updated summary plan description, plan description, and the latest annual report, any

terminal report, the bargaining agreement, trust agreement, contract, or other instruments under

which the plan is established or operated."

> As the Supreme Court noted in *Bruch*, 489 U.S. at 118 (quoting H.R. Rep. No. 93-
> 533, p. 11 (1973)), "Congress' purpose in enacting the ERISA disclosure
> provisions" was to "ensure that 'the individual participant knows exactly where he
> stands with respect to the plan.'" These provisions are given their teeth by 29
> U.S.C. § 1132(c), which provides that a benefits plan administrator who fails to
> respond within thirty days to a request for information made pursuant to ERISA's
> disclosure provisions may be liable to the plan participant for up to $100 per day.

---

[4]

 As an aside, the issues in this case are not the pure ERISA questions implicated in a typical
judicial review of an ERISA administrator's decisions regarding a participant's claim that require
application of the applicable standard of review in review of the medical evidence in the Record.
As the matter stands before this Court, other, more procedural issues are implicated, such as the
relationship between Whirlpool, the Committee, and UniCare, which require that the Court look to
other sources of evidence, such as the contract between UniCare and Defendants.  In fact, the
contract was introduced as evidence by Defendants, not by Plaintiff, and Defendants raise no
objection to the Court's consideration of the contract as evidence of the relationship between
Defendants and UniCare.  *See, e.g.,* Def.'s Motion for Summary Judgment, Doc. 14 at 8.

22

*Minadeo v. ICI Paints*, 398 F.3d 751, 757 (6th Cir. 2005) (parallel citations omitted).

 Whether to assess penalties and in what amount rests in the discretion of the Court. *Bartling v. Fruehauf*, 29 F.3d 1062, 1068 (6th Cir. 1994). "[T]he statute does not require a district court to take testimony or make any particular findings before assessing a penalty." *Lampkins v. Golden*, 1996 U.S. App. Lexis 33271, *11-12 (6th Cir. 1996).  While a showing of injury or prejudice to the claimant is a logical concern, *Gatlin v. Nat'l Healthcare Corp.*, 16 Fed. Appx. 283, 289 (6th Cir. 2001) (citing *Bartling*, 29 F.3d at 1068-69), such a showing is not essential. *Steadman v. Bd. of Trustees*, 2006 U.S. Dist. Lexis 43919, *16-18 (N. D. Ohio 2006). Rather, the purpose of the statute, as interpreted "[i]n this circuit . . . is to punish plan administrators who fail to comply with requests for documents which ERISA requires them to provide." *Osborn v. Knights of Columbus*, 401 F. Supp.2d 822, 825-26 (N. D. Ohio 2005); *see also Bartling*, 29 F.3d at 1068.  Even mere negligence might justify an award of statutory penalties, *McGrath v. Lockheed Martin Corp.*, 48 Fed. Appx. 543, 557 (6th Cir. 2002), because "the failure of defendant's process for responding to requests for information is itself a matter of Congressional concern." *Dooley v. GMC*, 1997 U.S. Dist. Lexis 13168 at *6 (E.D. Mich. 1997).

 Plaintiff cites several cases that inform a court's awarding of damages.  *See Gatlin*, 16 Fed. Appx. at 289-90 (affirming award of $100 per day when the defendant "sent the plan documents 151 days after they were originally requested" where the delay hindered the plaintiff's ability to appeal the decision at the earliest opportunity); *Bartling*, 29 F.3d at 1069; *Logan v. UniCare Life & Health Ins., Inc.*, 2007 U.S. Dist. Lexis 45654, *10-11 (E. D. Mich. 2007) (Because claimant was prejudiced "the statutory maximum of $110 per day is warranted in this case," for 341 days, or $34,540); *Zirnhelt v. Mich. Consol. Gas Co.*, 2006 U.S. Dist. Lexis 91385, *4-5 (E. D. Mich.

2006) (An award of $10,500.00 where "[t]he punitive conduct here is the needless delay in obtaining an administrative adjudication of Zirnhelt's claim for benefits and an adjudication of this lawsuit."); *Shephard v. O'Quinn*, 2006 U.S. Dist. Lexis 24252, *9-10 (E. D. Tenn. 2006) (awarding $100 per day for 826 days, or $90,860.00 because "the undisputed facts present an egregious case whereby the plaintiff has truly been harmed by the defendants' actions [and the] defendants have presented no mitigating evidence or defense to these claims."); *McGrath*, 48 Fed. Appx. at 557 (affirming district court's award of $7,700.00 where there was no evidence of prejudice or bad faith); *Mitchell v. DaimlerChrysler Corp. Salaried Emples. Ret. Plan*, 2006 U.S. Dist. Lexis 27459, *25-26 (N. D. Ohio 2006) ("Based on the absence of bad faith and harm, and also on the relatively short length of the delay, the Court finds that the plaintiff is entitled to statutory damages, although the statutory damages will be limited to $50 for each day, or $2,800."); *Dies v. Provident Life & Accident Ins. Co.*, 2006 U.S. Dist. Lexis 84480, *27-28 (M. D. Tenn. 2006) (awarding $25 per day per document for lengthy delays of 160 and 413 days, regardless of actual prejudice).

Plaintiff seeks statutory penalties for Defendants' delay in producing documents, i.e., the Plan and the Record, after the April 4, 2006 letter from UniCare denying benefits (Doc. 20).  The Committee did not produce such documents, apparently because it did not consider itself to be engaged in a claims appeal process.  Def.'s Br., Doc. 23 at 5.  As discussed above, however, the language of the contract between UniCare and Whirlpool makes clear that a process for appeals to the Committee did exist, as acknowledged on multiple occasions by UniCare.  Whirlpool therefore violated its duty under ERISA, 29 U.S.C. § 1024(b)(4) to provide plan documents to participants engaged in a claim free of charge.  This delay extended Plaintiff's claims process, and there is

24

even some evidence in the Record that a physician actually observed medical effects of the claims process on Weddell.  (*See* R. at 225.)

While the Plan is clearly covered under ERISA's plan documents disclosure requirement, 29 U.S.C. § 1024(b)(4), Defendants argue that an administrative record is not covered.  Taking into consideration that point, as well as the fact that the SPD was provided, but also that there was a delay of 237 days between the date 31 days after the June 29, 2006 request for and the March 23, 2007 production of the Plan documents, and that the Committee was at least negligent in interpreting its contract to exclude a level of appeal to the Committee, the Court awards Plaintiff $60.00 per day, or a total of $14,220.00.

## IV. Conclusion

Defendant's motion for summary judgment on the administrative record (Doc. 14) is hereby denied.  Plaintiff's amended motion for judgment as a matter of law (Doc. 19) is hereby granted, and the matter is remanded to the administrator for further review.  Plaintiff's motion to restore certain documents to the administrative record (Doc. 21), and Plaintiff's amended motion for statutory penalties (Doc. 20) are hereby granted.  Defendants are ordered to pay Plaintiff $14,220.00.

IT IS SO ORDERED

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE